**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL BENTLEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 13-CV-4238-P** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Pursuant to 42 U. S. C. §§ 405 (g) and 1383 (c) (3), Plaintiff seeks review of a decision of the Commissioner for Social Security denying his applications for Supplemental Security Income ("SSI") under Title XVI and for Disability Insurance Benefits ("DIB") under Title II.  (Compl., doc. 1.)  The Commissioner has filed an answer, (Def.'s Answer, doc. 13), and a certified copy of the transcript of the administrative proceedings, (SSA Admin. R. [hereinafter "Tr."], docs. 14-15).  The parties have briefed the issues.  (*See* Docs. 20, 26, 29.)

On March 5, 2015, the assigned Magistrate Judge recommended that the Court affirm the Commissioner's decision.  (*See* Findings, Conclusions, and Recommendation ("FCR"), doc. 30.)  Plaintiff timely objected to the recommendation.  (*See* Pl.'s Obj'ns to Report and Recommendation [hereinafter "Obj'ns"], doc. 33.)  He objects that the Magistrate Judge erred in the following respects: (1) finding that the Administrative Law Judge ("ALJ") properly considered the medical opinions of his treating physician and that any error regarding those opinions was harmless; (2) finding harmless error when the ALJ failed to develop the administrative record under 20 C.F.R. § 404.1512(e) as required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); and (3) finding substantial

evidence to support the decision and finding that the ALJ was not required to re-consult when the ALJ relied upon physicians who did not have access to later medical opinions that could have changed their opinions. (*Id.* at 2.) He urges the Court to reverse the decision of the Commissioner and remand his case for further proceedings. (*Id.* at 10.) The Commissioner has not responded to the objections.

For the reasons that follow, the Court accepts the FCR, as modified herein, after reviewing all relevant matters of record, including the FCR and the filed objections, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3). Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

## I. AUTHORITY OF MAGISTRATE JUDGE AND STANDARD OF REVIEW

Section 636(b)(1)(B) of Title 28 of the United States Code grants magistrate judges authority to issue findings and recommendations regarding dispositive motions in cases referred to them. The statute provides for the filing of written objections to proposed findings and recommendations and for a de novo determination of matters "to which objection is made." Objections asserted in accordance with this provision serve "to narrow the dispute" and enable district judges "to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 & n.6 (1985).

Rule 72(b)(3) of the Federal Rules of Civil Procedure likewise provides for a de novo determination of "any part of the magistrate judge's disposition that has been properly objected to." Rule 72(b)(2) requires the objecting party to file "specific written objections" and grants other parties fourteen days to respond to such objections.

Consistent with § 636(b)(1) and Rule 72(b)(3), the Court reviews the findings and recom-

mendation of the Magistrate Judge in this case. It "may accept, reject, or modify the recommended

disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1).

## II. BACKGROUND

The Magistrate Judge set out the procedural and factual history, including medical evidence

and the decision of the ALJ that became the final decision of the Commissioner. The Court will not

restate the entirety of that background here. But the following summary places the issues and

objections in the proper context.

Plaintiff claims that he is disabled due to psoriasis and arthritis. (Tr. at 203.) In his DIB

application, he alleges disability beginning on December 1, 2008. (Tr. at 154.) In his SSI applica-

tion he alleges that his "disability began on January 19, 2008." (Tr. at 161.) The ALJ viewed both

applications as alleging disability beginning on January 19, 2008. (Tr. at 60.) The Magistrate Judge

viewed the applications similarly. (*See* FCR at 1.) Whether the onset date of disability is in January

or December 2008 makes no difference at this time.

The ALJ found that Plaintiff retained the residual functional capacity ("RFC")[1] to (1) lift or

carry twenty pounds occasionally and ten pounds frequently; (2) stand or walk for "45 minutes at a

time and up to 6 hours in an 8-hour workday;" (3) sit for six hours; (4) balance and stoop frequently;

(5) kneel and crouch occasionally; (6) "frequently handle and finger bilaterally." (Tr. at 63.) Plain-

tiff had no capacity to "operate foot controls, climb, and crawl" and he "would need to avoid

---

[1]A claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. *Id.* §§ 404.1546(c). 416.946(c). But that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

extremes of heat, cold, dampness, or humidity." (*Id.*)  He should work "indoors, avoiding direct

sunlight and chemicals or other irritants." (*Id.*)  Except for these environmental limitations, the ALJ

cites no support for her findings.  (*See* Tr. at 65.)

It appears that the ALJ relied heavily on a March 3, 2011 Physical RFC Assessment com-

pleted by Andrea Fritz, M.D., even though the ALJ neither mentions Dr. Fritz nor cites to the

assessment found at Exhibit 8F of the administrative record.  (*Compare* Tr. at 65 *with* Tr. at 561-68.)

But the ALJ's RFC determination differs from the RFC assessment of Dr. Fritz in the following

notable respects:  (1) adding a 45-minute restriction relating to ability to stand or walk; (2) preclud-

ing use of foot controls when the assessment reflects an unlimited ability to push and/or pull, includ-

ing operation of foot controls, except as limited for lifting and carrying; (3) limiting kneeling and

crouching to occasionally instead of frequently; (4) prohibiting crawling when assessment indicates

that frequent crawling is acceptable; (5) entirely prohibiting climbing when the assessment limits

climbing a ramp or stairs to occasionally; (6) adding a restriction to handling and fingering bilater-

ally; and (7) adding environmental limitations.  (*Compare* Tr. at 65 *with* Tr. at 561-68.)  In making

her assessment on March 3, 2011, Dr. Fritz merely reviewed the medical files.  And she specifically

noted that the file did not include a medical source statement.[2]  (Tr. at 567.)  Even though the form

provides space to explain how or why the evidence supports her conclusions as to Plaintiff's exer-

tional limitations, Dr. Fritz left that space blank.  (*See* Tr. at 562.)  In June 2011, Randal Reid, M.D.,

---

[2]Among other things, a medical report should include

> A statement about what you can still do despite your impairment(s) based on the
> acceptable medical source's findings on the factors under paragraphs (b)(1) through
> (b)(5) of this section (except in statutory blindness claims).  Although we will re-
> quest a medical source statement about what you can still do despite your impair-
> ment(s), the lack of the medical source statement will not make the report incom-
> plete.

*See* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6) (citation omitted).

affirmed the RFC assessment of Dr. Fritz on reconsideration after reviewing "the evidence in file." (Tr. at 704).  The ALJ makes no mention of Dr. Reid and provides no indication that she relied on his affirming the RFC assessment.

The ALJ expressly declined to give controlling weight to statements from a treating source (Martin A. Menter, M.D.) because the "statements were made to assist the claimant with obtaining medication on a compassionate basis," and because treatment notes show that – with medication – Plaintiff has "done well with only limited symptoms reported or observed to date." (Tr. at 65.)  The ALJ did not identify the treating source in any respect and the only physicians mentioned by name are Robert A. Silverman who examined Plaintiff on January 27, 2011, and Paul Michiels, a physician who conducted a consultative examination in February 2007.  (Tr. at 63-65.)  But the ALJ does refer to records of (1) Plaintiff's treating physician, Dr. Menter, (Exs. 6F, 9F, and 12F);[3] (2) Dr. Michiels (Ex. 3F); (3) Dr. Silverman (Ex. 7F); and (4) Mariangeli Arroyo, M.D., of Baylor Health Care System (Ex. 16F).  (Tr. at 64-65.)

Dr. Menter began treating Plaintiff no later than early March 2009.  (*See* Tr. at 616 (showing Plaintiff to be a patient as of March 3, 2009), 769 (same).)  He has provided ongoing treatment for Plaintiff until at least November 2011.  (*See* Tr. at 744.)  The Court will discuss records of Dr. Menter as needed throughout this order.

In February 2007, Dr. Michiels examined Plaintiff on a one-time basis for a prior claim of

---

[3]Notably, many copies in Exhibits 6F, 9F, and 12F cut off the far right of the medical record; thus providing less than a full record.  In addition, Exhibits 6F and 9F substantially overlap with respect to medical records from January 2008 through November 2010.  When the same medical record appears in the administrative record multiple times, the Court will typically cite to only one entry.  Exhibit 9F also contains records through April 2011.  The administrative record also contains other records of Dr. Menter.  (*See* Tr. at 338-432 (Ex. 2F containing records from November 12, 1997, through March 29, 2006, per Court Transcript Index), 706-38 (Ex. 11F containing records from May through September 2009 per Court Transcript Index), 765-91 (Ex. 13F containing records from March 2009 through August 2011 per Court Transcript Index).)  The ALJ does not refer to these exhibits in her decision.  (*See* Tr. at 60-67.)

5

disability.  (*See* Tr. at 435-39.)  He assessed psoriasis and psoriasis arthritis with knee and hand involvement.  (Tr. at 437.)  Although he noted some limitations with respect to range of motion in Plaintiff's hands, he noted no other issue with range of motion.  (Tr. at 438.)  And he found Plaintiff's left knee to be normal.  (Tr. at 439.)

Dr. Silverman likewise examined Plaintiff once in January 2011 and noted that "patient's psoriasis has markedly improved" during the prior two years while on his medications.  (Tr. at 558.)  But the doctor also recognized that Plaintiff "does have what may represent psoriatic arthritis," particularly in his left wrist, knee, and ankle.  (*Id.*)  This condition presented "significant pain and limitation in movement due to pain in those joints," which were helped "somewhat" by use of Aleve.  (*Id.*)  Plaintiff stated that he could sit for about one hour, stand for about two hours, walk about one block.  (*Id.*)  Physical examination revealed "slight decreased range of motion with mild swelling" of left ankle, but full range of motion and no swelling in left wrist and knee.  (*Id.* at 559-60.)  Dr. Silverman concluded that Plaintiff's psoriasis was "well controlled with combination therapy" and that his joint pain seemed to manifest from psoriatic arthritis.  (*Id.* at 560.)  He found that Plaintiff's "symptoms are suboptimally controlled on [over-the-counter] anti-inflammatory meds."  (*Id.*)  He noted a guarded prognosis.  (*Id.*)

Dr. Arroyo treated Plaintiff in October and December 2011.  (Tr. at 820-27.)  She noted that his psoriasis was "currently under control" through medication, but his "main issue [wa]s poly-articular arthritis."  (Tr. at 825.)  His arthritis "seem[ed] very well controlled with Aleve."  (Tr. at 826.)  His condition was essentially the same in December 2011, although Plaintiff had increased arthritis in his right hand joint following a fall during the prior week.  (*See* Tr. at 822-24.)

The ALJ specifically based her RFC decision "on updated evidence that was not available

for review by the State Agency, and a different interpretation of the evidence reviewed by the State Agency physician."  (Tr. at 65.)  The previously unavailable evidence appears to be any medical record that post-dates June 2011 decision of Dr. Reid to affirm the RFC assessment of Dr. Fritz.

Given her determined RFC, the ALJ found Plaintiff unable to perform his prior work.  (Tr. at 65.)  And at Step 5 of the sequential inquiry used to determine whether a claimant is disabled,[4] and based on the testimony of the vocational expert ("VE"), the ALJ found Plaintiff able to perform identified jobs (call out operator, information clerk, and ticket taker), which exist in significant numbers in the national and regional economies.  (Tr. at 66.)

### III.  OBJECTIONS

Plaintiff presented three issues for review in this action: (1) whether the ALJ properly considered opinions of a treating physician, Dr. Menter; (2) whether the ALJ should have obtained an updated medical opinion or testimony from a medical expert at the hearing; and (3) whether the ALJ's RFC assessment is supported by substantial evidence.  The Magistrate Judge made recommendations on each issue.  And Plaintiff has asserted objections to specific findings and recommendations on each of the issues.  He objects that the ALJ made prejudicial errors regarding the first two issues, substantial evidence does not support the decision, and with respect to that issue, the ALJ erred by not re-consulting with a medical expert under SSR-96-6p.[5]  (Obj'ns at 2.)

---

[4]Step 5 involves determining whether "the claimant can perform other substantial work in the national economy."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  And the Commissioner has the burden at Step 5 of the sequential analysis.  *Id.*  If the Commissioner shows that the claimant is able to perform such work, the claimant has an opportunity to rebut that showing.  *Id.*

[5]*See* Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, SSR 96-6P, 1996 WL 374180, at *1-4 (S.S.A. July 2, 1996).

A.  **SSR 96-6p**

Plaintiff objects that SSR 96–6p dictates that the ALJ re-consult with a prior physician when later evidence may change the physician's opinions.  (Obj'ns at 2.)  As found by the Magistrate Judge, however, SSR 96-6p does not mandate an updated medical opinion unless there is an issue of equivalency at Step 3 of the sequential analysis.  (*See* FCR at 26 & n.5.)  This case presents no such issue.  The Court overrules the objection based upon SSR 96-6p.

Plaintiff's original briefing suggests that SSR 96-6p also relates to an obligation to seek clarification or additional evidence from a treating physician under *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).  (*See* Orig. Br. (doc. 20) at 9-11.)  In his objections, Plaintiff addresses the *Newton* duty separately from SSR 96-6p.  Because *Newton* did not involve SSR 96-6p, the two distinct issues are properly addressed separately.

B.  **Obligation to Update Medical Record under *Newton***

Plaintiff also objects that the ALJ erred by not seeking clarification or additional evidence from Dr. Menter under 20 C.F.R. § 404.1512(e) as required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).  (Obj'ns at 2, 6-8.)  He had made the same argument in his original briefing.  (Orig. Br. at 9-11.)  The Magistrate Judge addressed the issue as argued by Plaintiff, (*see* FCR at 25 (relying on § 404.1512(e), § 416.912(e), *Newton*, and *Cornett v. Astrue*, 261 F.. App'x 644 (5th Cir. Jan. 3, 2008)), but found no reason to require the ALJ to seek additional evidence under *Newton* and those regulations, (FCR at 28-29).

As recently noted in the Northern District of Texas, however, 20 C.F.R. § 404.1520b(c)(1) has replaced the former mandatory requirement of § 404.1512(e) that *Newton* applied.  *See Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *7 (N.D. Tex. Sept. 17, 2015) (citing 20 C.F.R.

§ 404.1520b(c)(1); *Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670, at \*7 (N.D. Tex. Feb. 13, 2015) (accepting recommendation of Mag. J. which recognized that, effective March 26, 2012, this new regulation replaced the former mandatory requirement of § 404.1512(e) applied in *Newton*)).  When the ALJ issued her decision on June 20, 2012, § 404.1520b and its counterpart § 416.920b were in effect.  Consequently, § 404.1512(e) as applied in *Newton* has no continuing viability.  The Court thus overrules any objection based on the former regulatory scheme.  The new regulations provide the appropriate basis for determining whether the ALJ should obtain additional evidence from a treating source.  The Court will consider this issue further in the next section.

## C.  Evaluating Opinions of Treating Physician

The Magistrate Judge found that "the ALJ was required to perform the six-factor analysis set forth in 20 C.F.R. § 404.1527(c)(1)-(6) before dismissing the ADL Statements."[6]  (FCR at 22.)  But she noted that the ALJ had "specifically stated that she considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927."[7]  (*Id.*)  And the Magistrate Judge further found that "the ALJ's opinion reflects that she properly weighed all the evidence, and her narra-

---

[6]These statements regarding Plaintiff's activities of daily living ("ADLs") are within medical records from January and August 2011 and April, August, and September 2010.  (*See* Tr. at 448-53, 648-54, 748-49.)  In each record, Dr. Menter states:  "Patient presents today with marked impairment in the activities of daily living due to the medical limitations imposed by [psoriasis].  Aggressive treatment is necessary to improve the patients [sic] life and ability to function."  (Tr. at 449, 451, 453 (cutting off or omitting word "aggressive"), 648, 749 (cutting off or omitting word "aggressive").)  As Plaintiff points out in his brief, "activities of daily living" is a defined term within the social security context.  (*See* Orig. Br. at 7 n.1 (citing 20 C.F.R. Part 404, Subpart P Appendix 1. 12.00).  The cited appendix recognizes ADLs as one of four criteria used to assess the functional limitations of an individual when the Social Security Administration assesses the severity of medically determinable mental impairments.  *See* 20 C.F.R. Part 404, Subpart P Appendix 1. 12.00C.  A "marked" limitation means "more than moderate but less than extreme."  *Id.*  Such a limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  *Id.*  The appendix identifies "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office" as examples of activities of daily living.  *Id.*

[7]Section 404.1527 addresses evaluation of disability in general under Title II, whereas § 416.927 addresses the same issue under Title XVI.

tive discussion showed that she thoroughly analyzed and took into account the treatment notes during the relevant period." (*Id.* at 23.) In addition, the Magistrate Judge found that "the record reflects that Dr. Menter made the statements about Plaintiff's activities of daily living at the time he applied to Abbott to receive 'compassionate Humira' for Plaintiff." (*Id.*) Given treatment notes reflecting that Plaintiff had only limited symptoms and the ALJ's specific statement that the doctor made the ADL statements in connection with a request for compassionate medication, the Magistrate Judge found that the ALJ satisfied her duty under the regulations and had good cause to afford little or no weight to the ADL statements. (*Id.*) Lastly, the Magistrate Judge found that even if "the ALJ erred in failing to give the ADL Statements controlling weight, the error was harmless and Plaintiff has not shown prejudice from it." (*Id.* at 24.)

The undersigned has considered the treating physician issue on several occasions relatively recently. *See Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *2-12 (N.D. Tex. Sept. 17, 2015) (sustaining objection regarding consideration given to treating physician); *Kelly v. Colvin*, No. 3:14-CV-1677-P-BK, 2015 WL 1592153, at *1 (N.D. Tex. Apr. 7, 2015) (remanding case after accepting recommendation finding that the ALJ erred in weighing medical opinions of treating physician); *McDonald v. Colvin*, No. 3:13-CV-4645-P- BF, 2014 WL 6790325, at *1 (N.D. Tex. Dec. 2, 2014) (same); *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *2-6 (N.D. Tex. June 30, 2014) (sustaining objection regarding consideration given to treating physician); *Howeth v. Colvin*, No. 12-CV-0979-P, 2014 WL 696471, at *5-12 (N.D. Tex. Feb. 24, 2014) (finding that the ALJ improperly rejected opinions of treating psychiatrist and remanding case); *Snodgrass v. Colvin*, No. 11-CV-0219-P, 2013 WL 4223640, at *4-13 (N.D. Tex. Aug. 13, 2013) (finding that the ALJ improperly rejected opinions of treating psychologist, finding no substantial evidence to support

determination that substance abuse was a contributing factor material to claimant's disability, and remanding case for further proceedings due to the prejudicial failure to properly consider the opinions of the treating psychologist).  In *Perry*, *Wilder*, *Howeth*, and *Snodgrass*, the undersigned extensively discussed the treating physician issue.

In all cases, the ALJ must consider and weigh the medical opinions[8] of treating sources.  *See* 20 C.F.R. §§ 404.1527(b)-(c) (stating for Title II claimants that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive"), 416.927(b)-(c) (same for Title XVI claimants).  At the outset, an ALJ should properly identify each medical source opinion that is from a treating source.  Although a precise identification aids judicial review of the issue, a common practice at the administrative level appears to be to simply identify the opinions generally with little, if any, specificity.  The lack of precision affects judicial review in that reviewing courts address ALJ findings as framed through the administrative process.

In this case, the decision of the ALJ provides even less detail than a general identification of treating source opinions.  At no point does the ALJ even identify the treating physician – Dr. Menter – by name.  And although she often relies on his medical records, she merely identifies them by exhibit and page number, i.e., Exhibit 6F, p. 16, etc.  Moreover, with respect to his ADL statements, the ALJ simply states that she considered claimant's argument that she should give controlling weight to "statements made by treating sources that the claimant's activities of daily living . . . are

---

[8]As the regulations explain to claimants:  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  The regulation reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulations.  *Id.* §§ 404.1527(d), 416.927(d).

markedly limited." (Tr. at 65.) She did not give the statements controlling weight, however, because "treatment records indicate these statements were made to assist the claimant with obtaining medication on a compassionate basis, and treatment notes show with this medication the claimant has done well with only limited symptoms reported or observed to date." (*Id.*) The ALJ decision reflects no other review or consideration of the ADL statements.

After identifying relevant medical opinions of treating physicians, ALJs must determine whether any such opinion is entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source's medical opinion is entitled to controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with" other substantial evidence. *Id.*; *accord Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). As found by the Magistrate Judge, the ADL statements are medical opinions within the meaning of the regulations. (*See* FCR at 24 n.4); *accord Bryant v. Colvin*, No. 5:12-CV-02868-MHH, 2014 WL 4415971, at *4 (N.D. Ala. Aug. 29, 2014) (recognizing that a medical opinion can include ADLs); *Hinkle v. Astrue*, No. CV 09-5105 NJV, 2010 WL 3238940, at *5 (N.D. Cal. Aug. 13, 2010) (same); *Birdwell v. Barnhart*, No. 2:06-0063, 2008 WL 2414828, at *13 (M.D. Tenn. June 12, 2008) (discussing assessments of ADLs as medical opinions). And in this case, it is apparent that the ALJ did not accord the statements controlling weight. But the ALJ does not directly address whether the statements are well-supported by medically acceptable diagnostic techniques or whether they are inconsistent with other evidence. One must infer from the vague explanation of the ALJ that the statements do not satisfy the criteria for granting them controlling weight.

The Magistrate Judge appears to accept that Dr. Menter made the ADL statements to assist claimant in obtaining compassionate care. (*See* FCR at 23.) But it appears entirely speculative that,

simply to assist receipt of compassionate care for his patient, Dr. Menter noted that his patient was markedly impaired with respect to activities of daily living.  And the ALJ fails to identify anything that specifically supports that conclusion.  When an ALJ suggests impropriety on behalf of a physician, the courts typically reject such suggestion in the absence of specific, supporting evidence.  *See Kelly v. Colvin*, No. 3:14-CV-01677-P-BK, 2015 WL 1592153, at *7 (N.D. Tex. Apr. 7, 2015) (accepting recommendation of Mag. J. citing cases).

Moreover, the administrative record before the Court does not support the suggestion.  In early March 2009, Dr. Menter submitted a Patient Assistance Application to Abbott Patient Assistance Foundation ("Abbott") so that Plaintiff could obtain a six-month supply of medication at no cost.  (Tr. at 616.)  Later that month, Humira Nurse Support informed Dr. Menter that Plaintiff had received free training and education services regarding his Humira medication.  (Tr. at 609.)  A medical record from September 2009 shows that Plaintiff started Humira on March 22, 2009.  (*See* Tr. at 657.)  In March 2010, Dr. Menter again contacted Abbott to secure Humira medication on behalf of Plaintiff.  (*See* Tr. at 597 (March 17, 2010 record showing temporary acceptance through March 2011 because patient may be eligible for permanent assistance through Texas medicaid), 605 (March 8, 2010 record showing a recent application).)  Despite these prior applications for medication on a compassionate basis, Dr. Menter first notes marked impairment in Plaintiff's activities of daily living in April 2010.[9]  (*See* Tr. at 654.)  Such notations continue to appear in August and September 2010 and January and August 2011.  (*See* Tr. at 648, 650, 652, 749.)  And during this time, Dr.

---

[9]The Magistrate Judge attributes this notation to a physician assistant, Cynthia Trickett, but the record identifies the "sign-off" person as Dr. Menter.  (*See* Tr. at 654.)  Ms. Trickett, however, did sign off on an August 2010 medical record.  (*See* Tr. at 652.)  Because the record for August 2010 ends on the same page that the April 2010 record begins, the recording format makes it more difficult than necessary to separate the various records.

Menter continued to prescribe the medication and have contact with Abbott. (*See* Tr. at 579 (January 2011 record showing recent application for assistance); 589 (September 2010 record showing recent application for assistance), 592 (June 2010 "urgent" prescription for medication because "patient out of medication").)   The Court finds no basis in the record for finding that Dr. Menter made the ADL statements solely to assist his patient with receiving compassionate care.  In March 2010, Abbott had accepted Plaintiff on a temporary basis through March 2011.  Following that acceptance, Dr. Menter began noting marked impairment in Plaintiff's ADLs.  If Dr. Menter exaggerated limitations so as to assist Plaintiff to receive compassionate care why would the perceived false or exaggerated statements not appear in medical records until after the patient's acceptance for such care?  In any event, although Dr. Menter undoubtedly helped his patient obtain compassionate care, it does not flow logically from that assistance that he exaggerated statements.

For the foregoing reasons, the ALJ erred in relying on her subjective belief that Dr. Menter made the ADL statements so that claimant could obtain compassionate care.  Such belief provides no basis for discounting the doctor's medical opinions.  The ALJ also explained that she did not accord the ADL statements controlling weight because "treatment notes show with this medication the claimant has done well with only limited symptoms reported or observed to date."  This vague explanation can at least be reasonably construed as a finding that the ADL statements are incon-sistent with treatment notes, which is a proper consideration when determining whether to give medical opinions controlling weight.  It is difficult to ascertain the accurateness of the ALJ's explan-ation because she cites to no particular treatment notes to support the statement that Plaintiff has done well with medication.  But the records that she cites in other portions of her decision provide some support for that statement.

14

After considering whether controlling weight is warranted for a medical opinion of any treating source, the ALJ determines the weight to be given to any such opinion that is not entitled to controlling weight. And unless the ALJ gives "a treating source's opinion controlling weight," §§ 404.1527(c) and 416.927(c) provide a six-factor detailed analysis to follow.[10] Furthermore, to properly assess the weight to be given to an opinion that is not entitled to controlling weight, the ALJ must consider the six factors set out in the regulations. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). An ALJ may assign "little or no weight" to an opinion from a treating source for good cause shown. *Id.* at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Regardless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Id.* at 453. In addition, under 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1), "the ALJ may re-contact a treating physician or other medical source if there is insufficient evidence to determine whether the claimant is disabled." *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL

---

[10]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c), 416.927(c).

5458925, at *7 (N.D. Tex. Sept. 17, 2015).[11]  Similarly, "if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [the claimant is] disabled," the current regulations likewise provide various options, including re-contacting a treating physician or other medical source, to resolve an inconsistency or insufficiency of evidence.  20 C.F.R. §§ 404.1520b(c), 416.920b(c).

The Magistrate Judge recognized that *Newton* required the ALJ to consider the six regulatory factors before rejecting the ADL statements of Dr. Menter because no treating or examining source directly controverted those statements.  (FCR at 22.)  Although the Magistrate Judge noted that the ALJ had specifically stated that she considered the opinion evidence in accordance with the regulatory requirements, (*see id.*), courts may disregard blanket statements by ALJs that they have considered the entire record, *see Scott v. Heckler*, 770 F.2d 482, 487 (5th Cir. 1985) (looking beyond similar general statement and remanding for consideration of the combined effect of the claimant's impairments); *Compton v. Astrue*, No. 3:09-CV-0515-B-BH, 2009 WL 4884153, at *4-9 (N.D. Tex. Dec. 16, 2009) (accepting recommendation of Mag. J. that case be remanded with directions for the ALJ to apply the correct legal standard for considering opinions of treating physician even though the ALJ had stated that he had considered the entire record).  Unless the record supports a global statement by an ALJ that she considered opinion evidence in accordance with applicable regulations, courts should not accept or rely on such a statement.  The courts instead look to the substance of ALJ decisions to determine what the ALJ considered and whether the ALJ applied the correct legal standards.  An ALJ cannot sidestep the regulatory requirements of 20 C.F.R. §§ 404.1527(b)-(c) and

---

[11]As previously mentioned, these new regulations became effective March 26, 2012, and were in effect when the ALJ issued her decision on June 20, 2012.  Prior to the effective date of the amended regulations, the ALJ would have been obliged under the mandatory provision of the prior regulations to "seek clarification or additional evidence from the treating physician" if the ALJ determined "that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant."  *See Newton*, 209 F.3d at 453.

416.927(b)-(c) by merely stating that she considered the opinion evidence in accordance with those regulations.  The decision itself must reflect such consideration.

The Magistrate Judge found that the ALJ decision reflects that the ALJ considered the required factors because the ALJ reviewed Dr. Menter's treatment notes and considered whether his ADL statements were consistent with those notes and the record as a whole.  (FCR at 22.)  But consistency of the ADL statements with the record as a whole is only one of the six factors required to be considered.  The ALJ, moreover, appears to have considered the consistency of the ADL statements only in the context of whether they were entitled to controlling weight.  That context is different than whether the statements are entitled to any weight at all.

The Magistrate Judge further found that the ALJ's two-pronged explanation for not according the ADL statements controlling weight satisfy the ALJ's "duty under the regulations and constitute 'good cause' for affording little or no weight to the those statements in her RFC determination." (FCR at 23.)  However, the speculative belief that Dr. Menter exaggerated medical records to support an application for compassionate care satisfies no duty under the regulations and does not provide good cause for discounting the weight to be given to the doctor's medical opinions.  And while the second proffered reason of the ALJ – treatment notes show claimant has done well with medication and only limited symptoms reported or observed – may satisfy the regulations with respect to whether the ADL statements are entitled to controlling weight, that determination differs materially from whether the ALJ has satisfied her duty to comply with the required six-factor detailed analysis for determining the weight to be given to such medical opinions.

The issue presented by Plaintiff is not limited to whether the ALJ should have given the ADL statements controlling weight – the issue is whether the ALJ conducted the six-factor detailed anal-

17

ysis when determining what weight, if any, she would accord the medical opinions of Dr. Menter. The six-factor analysis only comes into play after the ALJ has determined that a treating source's medical opinion is not entitled to controlling weight.  In this case, the ALJ certainly accorded significant – if not controlling – weight to some medical opinions of Dr. Menter.  (*See*, *e.g.*, Tr. at 65 (specifically citing an opinion of Dr. Menter that supports environmental restrictions on Plaintiff's work setting).)  But with respect to the weight given to the ADL statements, the record is silent except for the ALJ's statement that she would not give controlling weight to them.

As recognized by the Magistrate Judge, the ALJ did not conduct the required six-factor analysis.  The Magistrate Judge found that "[e]ven assuming that the ALJ erred in failing to give ADL statements controlling weight, the error was harmless and Plaintiff has not shown prejudice from it."  (*See* FCR at 24.)  Although stated in terms related to whether the ALJ erred in not according controlling weight to the opinions, the Magistrate Judge properly recognized that even when an ALJ procedurally errs by not more fully considering and weighing the opinions of a treating physician, such error is subject to a harmless error analysis.  Reversal and remand is only required when the error affects the substantial rights of the claimant.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (applying harmless error analysis to a different type of ALJ error); *Singleton v. Colvin*, No. 3:12-CV-0821-BF, 2013 WL 1562867, at *12 (N.D. Tex. Apr. 15, 2013) (applying harmless error analysis to similar error).  Absent an error that affects the substantial rights of a party, administrative proceedings do not require "procedural perfection."  *Taylor*, 706 F.3d at 603.  Procedural errors affect the substantial rights of a claimant only when they "cast into doubt the existence of substantial evidence to support the ALJ's decision."  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  An error is harmless when "[i]t is inconceivable that the ALJ would have reached a different

conclusion on th[e] record." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam). Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam).

Under the facts in this case, the Magistrate Judge correctly finds that had the ALJ given controlling weight to the opinions of Dr. Menter that Plaintiff was markedly impaired in his activities of daily living, such change would make no difference to the RFC determination of the ALJ. Dr. Menter does not indicate what he means by markedly impaired. Nor does he identify any specific activities that are limited. His opinions are essentially conclusory without adequate information to determine how the marked impairment affects Plaintiff's ability to engage in substantial gainful activity. And nothing of record indicates that being markedly impaired in ADLs would result in a different RFC determination or make the claimant unable to engage in substantial gainful activity on a sustained basis. Without more detail about the marked impairment in ADLs, the Court finds no realistic possibility that the ALJ would have reached a different RFC conclusion had she conducted the detailed regulatory analysis.

And on the administrative record before the Court, even had the ALJ given controlling weight to those opinions of Dr. Menter or conducted the detailed analysis required by *Newton*, the Court finds no realistic possibility that she would have concluded that the administrative record was insufficient to determine whether the claimant was disabled or that she could not determine whether the claimant was disabled after weighing the evidence. Consequently, there is no realistic possibility that the ALJ would have re-contacted Dr. Menter or another medical source or having the claimant undergo another consultative examination. *See* 20 C.F.R. §§ 404.1420b(c), 416.920b(c).

On the record before it, the Court agrees with the Magistrate Judge that the ALJ's failure to conduct the detailed analysis is harmless error.

### D.  Substantial Evidence

Plaintiff objects that the ALJ relied on an inaccurate, incomplete medical record when she relied on the RFC findings of Dr. Fritz to formulate part of her RFC determination.  (Obj'ns at 8-9.) The Court overrules this objection.  As found by the Magistrate Judge, substantial evidence supports the ALJ's RFC determination.  (*See* FCR at 30-34.)  The ALJ extensively relied on the RFC assessment of Dr. Finch.  But the ALJ also significantly altered that assessment based upon other evidence of record.  Compared to the doctor's RFC findings, the ALJ's RFC determination set out greater limitations for Plaintiff in two of five exertional limitations, four of six postural limitations, two of four manipulative limitations, and six of eight environmental limitations.  The ALJ specifically noted that the environmental limitations came from records of Dr. Menter.  And the other changes appear supported from the medical record as noted by the Magistrate Judge.  The substantial evidence to support the RFC determination provides an additional reason to find no realistic possibility that the ALJ would have utilized any option under 20 C.F.R. §§ 404.1420b(c), 416.920b(c).

### IV.  CONCLUSION

After reviewing all relevant matters of record in this case, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and the filed objections, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court accepts the Findings and Conclusions of the Magistrate Judge as modified herein.  It has conducted a de novo review and determination as to the issues to which Plaintiff has specifically objected.  Having reviewed the remainder of the Findings, Conclusions, and Recommendation of the Magistrate Judge for clear

error, it is satisfied that there is no clear error on the face of the record.  Accordingly, as modified

and discussed herein, the Court accepts the Findings and Conclusions of the Magistrate Judge as the

Findings and Conclusions of the Court.  It accepts the recommended disposition and **AFFIRMS** the

Commissioner's decision to deny Supplemental Security Income and Disability Insurance Benefits

to Plaintiff.

   **SO ORDERED this 30th day of September, 2015.**

_____
**JORGE A. SOLIS**
**UNITED STATES DISTRICT JUDGE**